IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RICARDO RODRIGUEZ TIRADO**, *et. al.*,

    Plaintiffs,

    v.

**SPEEDY BAIL BONDS**,

    Defendant.

Civil No. 13-1671 (BJM)

## OPINION AND ORDER

Ricardo Rodriguez-Tirado ("Rodriguez") and Angelica Tirado-Velazquez ("Tirado-Velazquez") brought this diversity action against Speedy Bail Bonds ("Speedy")[1] and several other defendants,[2] alleging false imprisonment and negligence. Docket No. 1. Speedy counterclaimed, alleging Rodriguez breached the parties' bail bond agreement. Docket No. 12. Speedy moved to dismiss the action for lack of subject-matter jurisdiction, arguing that Rodriguez was not domiciled in Puerto Rico when the action was filed.[3] Docket Nos. 71, 77. Rodriguez opposed. Docket No. 74. The case is before me on consent of the parties. Docket No. 64.

For the reasons set forth below, the motion to dismiss is **DENIED**.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The "party invoking the jurisdiction of a federal court carries the burden of proving its existence." *P.R. Tel. Co. v. Telecomm's Reg. Bd. of P.R.*, 189 F.3d 1, 7 (1st Cir. 1999). When deciding whether subject-matter jurisdiction exists, the court follows two general rubrics: (1) when a defendant challenges the legal sufficiency of the facts alleged, the court credits plaintiffs' factual allegations

---

[1] Speedy is a New Jersey corporation. Docket No. 71 at 12.
[2] Plaintiffs dismissed the complaint against all other defendants. Docket Nos. 14, 21.
[3] Speedy does not suggest that diversity of citizenship is lacking due to Tirado-Velazquez's citizenship at the time this action commenced.

and draws reasonable inferences in his or her favor; and (2) when the defendant challenges the truth of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Speedy asserts it is untrue that Rodriguez was a domiciliary of Puerto Rico.

### BACKRGOUND

Rodriguez and Tirado Velazquez commenced this action on August 31, 2013, complaining that on May 5, 2011, Speedy's bounty hunters arrested Rodriguez in a house located in San Sebastian, Puerto Rico, after he allegedly failed to appear at a court hearing in New Jersey. Docket No. 1; Docket No. 74-1 ("Rodriguez Decl.") ¶¶ 2, 4. Rodriguez declared that he was living in this house and that the house sat on property he has owned since approximately 2002. Rodriguez Decl. ¶¶ 2, 3. On this property, Rodriguez (who is a motorcycle mechanic) operated a motorcycle repair shop. *Id.* ¶ 2; Docket No. 77-4 at 1. Rodriguez has presented a Puerto Rico driver's license (which was issued in 2009 and expired in 2014), is registered to vote in Puerto Rico (though he lost his voter registration card and has not obtained a replacement), and claims he had two bank accounts in Puerto Rico (one remains active and the other he used until mid-2014). Rodriguez Decl. ¶¶ 5, 6, 9; App'x A, Docket No. 74-1 at 4.

Seeking to show Rodriguez was not domiciled in Puerto Rico, Speedy highlights that a New Jersey address was listed in the documents related to his bail bond application. Docket No. 71-1 at 16.[4] These documents were created around 2010 and 2011.[5] Docket No. 71-1. Speedy also underscores that Rodriguez was scheduled to attend hearings in New Jersey in June and September 2013, and that a title search in the Puerto Rico Registry of Property did not reveal any property owned by Rodriguez in San Sebastian.

---

[4] The exhibits submitted by Speedy were documents that appear to be photographed from a distance. Docket No. 71-1–71-4. In light of this, the print on some documents took considerable effort to discern, while the small print on others was entirely illegible.

[5] In one of these documents, Rodriguez was asked to identify his race and nationality and the response he provided for both inquiries was "P.R." Docket No. 71-1 at 16.

Docket No. 71-3 at 1–2, 77-6. Speedy also emphasizes two facts from plaintiffs' responses to Speedy's interrogatories, which were provided in October 2015: that Rodriguez and his mother, Tirado-Velazquez, referred to the home in San Sebastian as if it were owned by Rodriguez's mother rather than Rodriguez; and that Rodriguez listed a New Jersey address as his "current residence." Docket No. 77-4, 77-5.

Rodriguez responds that the criminal charges against him were dismissed in August 2011. Rodriguez Decl. ¶ 7. He attached a court record that indicates so, as well as that bail was "discharged" when the charges were dismissed. App'x B, Docket No. 74-1 at 5. Rodriguez explains that the previously dismissed criminal charges were reinstated in January 2012, and that this time he was granted bail covered with his own funds rather than Speedy's. Rodriguez Decl. ¶ 7. Rodriguez represents that he was allowed to live in Puerto Rico while the case was pending, that he "only" traveled to New Jersey for the court hearings, and that he returned to Puerto Rico "immediately" after those hearings. *Id.* ¶ 8. While the charges were pending, he "continued to operate" his repair shop. *Id.* Rodriguez claims that he entered into a plea agreement around October 2013 and that a sentencing hearing initially set for December 2013 was continued to, and took place in, February 2014, when he was sentenced to a term of imprisonment. *Id.* ¶ 10.

Court records introduced by Speedy confirm that Rodriguez was scheduled to appear for hearings in October and December 2013. Docket No. at 71-3 at 3–4. And records from the New Jersey Department of Corrections confirm that Rodriguez was sentenced to a term of imprisonment on February 14, 2014, that lasted until April 7, 2015. Docket No. 71-4. Rodriguez has declared that during his incarceration and subsequent supervised release, he has "always had the intent" to return to his home and repair shop in Puerto Rico. Rodriguez Decl. ¶ 11.

## DISCUSSION

Speedy contends the evidence it has proffered belies any claim that Rodriguez was domiciled in Puerto Rico on August 31, 2013, the date when the complaint for this

action was filed. Rodriguez maintains that diversity of citizenship was not lacking at the time the action commenced. An evidentiary hearing was not requested by either party, and both sides relied on the documentary evidence in the record.

To establish federal jurisdiction on account of diversity of citizenship, "the matter in controversy" must "be between citizens of different states." *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008) (citing 28 U.S.C. § 1332(a)(1)). "For purposes of diversity, a person is a citizen of the state in which he is domiciled." *Padilla-Mangual*, 516 F.3d at 31. "A person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (quoting Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3612 (2d ed. 1984)). "Domicile is determined as of the time the suit is filed." *Padilla-Mangual*, 516 F.3d at 31. And once jurisdiction is established, it "is not lost by a subsequent change in citizenship." *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979).

When diversity jurisdiction is challenged, the party seeking to establish diversity of citizenship must prove his domicile by the "preponderance of the evidence." *Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004). And a district court "may rely on documentary evidence to establish whether jurisdiction attaches." *Padilla-Mangual*, 516 F.3d at 33. When doing so, the court considers various factors: "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992). "While no single factor is controlling, some courts have established a presumption of domicile in the state in which a party is registered to vote." *Id.* While no such presumption has been recognized for

courts within the First Circuit, the place where a person is registered to vote is still a "weighty" factor in this Circuit. *Padilla-Mangual*, 516 F.3d at 32.

In this case, Rodriguez appears to have been raised in Puerto Rico—as when he was asked to identify his race and nationality in a document related to his bail bond application, he responded "P.R." Docket No. Docket No. 71-1 at 16. Also probative of this proposition is Rodriguez's Puerto Rico license, which was issued in 2009. "There is, ordinarily, a presumption of continuing domicile," and because Rodriguez appears to have been raised in Puerto Rico until his relocation to New Jersey, "it is presumed that he was a domiciliary of Puerto Rico." *Padilla-Mangual*, 516 F.3d at 31 (internal citations omitted). Speedy implicitly argues that Rodriguez changed his domicile from Puerto Rico to New Jersey and did not intend to return. *See Mitchell v. United States*, 88 U.S. 350, 353 (1874) ("Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation.").

To "effect a change of one's legal domicil[e], two things are indispensable: First, residence in a new domicil[e]; and second, the intention to remain there." *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904). In support of its position, Speedy highlights that Rodriguez listed a New Jersey address in his bail bond application, and that a title search in San Sebastian revealed that Rodriguez owns no property there. It is certainly relevant that Rodriguez *himself* does not own real property in San Sebastian, as he claimed in his declaration. Yet, Speedy acknowledges that the house in San Sebastian belongs to Rodriguez's mother, and these family ties are also relevant to determining Rodriguez's domicile. *See Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972) (location where person's family "still lived" was considered in determining his domicile).

In support of his claim that he was a domiciliary of Puerto Rico, Rodriguez has filed a declaration under penalty of perjury in which he states that he has "always had the intent to return to" his home in Puerto Rico. *Padilla-Mangual*, 516 F.3d at 34 ("When . . . a party expressly declares his intent, and the opposing written submissions do not

demonstrate the falsity of the declaration with reasonable certainty, the issue necessarily becomes one of the declarant's credibility.") (quoting *Prakash v. American Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984)). In this regard, it bears noting that a "'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." *Hawes*, 598 F.2d at 701 (quoting *Gilbert v. David*, 235 U.S. 561, 569 (1915)). But seeking to establish that Puerto Rico was indeed his domicile in August 2013, Rodriguez makes several representations. He first asserts that he had his place of employment in Puerto Rico, as he is a motorcycle mechanic and operated a motorcycle repair shop on the property in San Sebastian. *See Aponte-Davila v. Municipality of Caguas*, No. 15-1800, 2016 WL 3648474, at *5 (1st Cir. July 8, 2016) (place of employment is "relevant to determining a party's domicile"). Speedy has not presented any evidence to demonstrate the falsity of this representation.

Rodriguez also has introduced his Puerto Rico driver's license, which was issued in 2009. *See Melendez-Garcia v. Sanchez*, 629 F.3d 25, 42 (1st Cir. 2010) (place where person has a driver's license is relevant). That Rodriguez did not obtain the driver's license immediately before filing suit and that he obtained it well before the underlying controversy of this case arose negates any inference that the license was obtained for purposes of getting this case into federal court. *See Leon v. Caribbean Hosp. Corp.*, 848 F. Supp. 317, 318 (D.P.R. 1994) ("court must not only weigh the quantity and quality of the ties to the [alleged] new domicile but also the bridges to the former domicile that still remain," and should scrutinize some things, like "obtaining a driver's license," which may not be difficult to acquire). And while the driver's license expired in 2014, Rodriguez has proffered an explanation for not renewing the license upon its expiration: he was incarcerated when the credential expired.[6] Moreover, Speedy did not offer any evidence that Rodriguez has obtained a driver's license elsewhere. *Cf. Lundquist v.*

---

[6] Records from the New Jersey Department of Corrections confirm that Rodriguez was incarcerated from February 2014 to April 2015.

*Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991) ("Although Lundquist stated he had a Florida driver's license, defendants introduced uncontradicted evidence that he also had a New Hampshire license.").

Rodriguez has also declared that he had two bank accounts in Puerto Rico, and that one of those accounts remains active. *See Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F. Supp. 2d 11, 17 (D.P.R. 2000) ("the state where the person's bank accounts are maintained" is relevant). Speedy has not offered any evidence that these representations are untrue, nor evidence showing that Rodriguez currently maintains bank accounts elsewhere. That Rodriguez still maintains a bank account in Puerto Rico and used the deactivated bank account until mid-2014 lends some support for his position. *See Rodriguez v. Senor Frog's de la Isla, Inc.*, 642 F.3d 28, 33 (1st Cir. 2011) (even though they "are not part of the primary calculus," post-suit happenings "may bear on the sincerity of a professed intention to remain"). In this vein, it is certainly noteworthy (and supportive of Speedy's position) that Rodriguez has remained in New Jersey after being released from incarceration. *See id.*

But as Rodriguez correctly retorts, "the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration, even if he is subsequently incarcerated in a different state." *Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010). Rodriguez's declaration sheds some light on the time period before his incarceration—the same time period in which this action commenced. It states that he was living in Puerto Rico, that he would travel to New Jersey "only" for purposes of attending the court hearings, and that he returned to Puerto Rico "immediately" after those hearings. In light of these representations—which Speedy has offered no evidence to discredit—not much can be inferred from the hearings that were scheduled to take place in New Jersey during June and September 2013.

In further support of his position, Rodriguez has declared that he is registered to vote in Puerto Rico. And while Rodriguez did not submit a voter registration card, he has

proffered an explanation: he lost it and has not obtained a replacement card. Speedy has not introduced any evidence whatsoever relating to this "weighty" factor, nor has it provided evidence that Rodriguez is registered to vote elsewhere. *See, e.g.*, *Padilla-Mangual*, 516 F.3d at 32; *see also Murphy v. Newport Waterfront Landing, Inc.*, 806 F. Supp. 322, 324 (D.R.I. 1992) (person who was raised, and registered to vote, in Massachusetts was domiciled in that state even though he moved to Nebraska where, among other pertinent factors, he "never registered to vote in Nebraska"). Having carefully considered all the documentary evidence in the record, which lends support to both parties, I find that Rodriguez has carried his burden of establishing by the preponderance of the evidence that he was a domiciliary of Puerto Rico on August 31, 2013. Thus, federal jurisdiction exists by virtue of diversity of citizenship.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED**. A jury trial is set to begin on August 29, 2016. The parties are urged to explore settlement.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 10th day of August 2016.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge